**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff,**

v.

**CAMILLERI BROS. CHEVROLET OF HOLYOKE, INC., Camilleri Bros., Inc. d/b/a C & C Subaru, Thomas Camilleri, Richard Camilleri, Individually, Sovereign Bank, Massachusetts Business Development Corporation and the Bank of Western Massachusetts, Defendants.**

No. Civ.A. 98–40128–NMG.

United States District Court, D. Massachusetts.

Aug. 14, 2000.

Paul M. Harris, Gadsby & Hannah, Boston, MA, for General Motors Acceptance Corp., plaintiff.

Frank P. Fitzgerald, Frank P. Fitzgerald, P.C., Springfield, MA, Stephanie A. Fitzgerald, Springfield, MA, Peter Q. Montori, Westfield, MA, for Camilleri Bros. Chevrolet of Holyoke, Inc., Camilleri Bros. Inc., Thomas Camilleri, Richard Camilleri, defendants.

Joel B. Rosenthal, Shapiro, Israel & Weiner, P.C., Boston, MA, for Massachusetts Business Development Corporation, interested party.

Jeffrey R. Cohen, Chappell White, Boston, MA, for Sovereign Bank, interested party.

Jonathan R. Goldsmith, Hendel, Collins & Newton, Springfield, MA, for Bank of Western Massachusetts, interested party.

Jonathan R. Goldsmith, Springfield, MA, for Bank of Western Massachusetts, defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

General Motors Acceptance Corporation ("GMAC") brought this action against Camilleri Bros. Chevrolet of Holyoke, Inc. ("Chevrolet"), Camilleri Bros., Inc. d/b/a C & C Subaru ("Subaru") and Thomas and Richard Camilleri (who are brothers) to recover monies due under loans made to Chevrolet. It alleges 1) a breach of contract claim against Chevrolet, 2) a claim against the brothers as guarantors, 3) claims to reach and apply the brothers' shares in Subaru and proceeds received from the sale of Subaru, and 4) fraudulent transfer claims pursuant to M.G.L. c. 109A against all defendants.

GMAC amended its complaint to add Subaru's secured creditors as defendants, including Sovereign Bank ("Sovereign"), Massachusetts Business Development Corporation ("MBDC") and The Bank of Western Massachusetts ("BWM") (collectively "the secured parties"). GMAC alleges that Chevrolet fraudulently transferred assets to Subaru, which "now desires" to convey those assets to the secured parties, and thus it also asserts fraudulent transfer claims against the secured parties pursuant to M.G.L. c. 109A.

Pending before this Court are (1) an unopposed motion to substitute BWM for MBDC (Docket No. 57), (2) the secured parties' motion to dismiss (Docket No. 51), and (3) Sovereign's motion for summary judgment and to modify the preliminary injunction (Docket No. 56).

### I. Background

GMAC loaned Chevrolet $2,000,000 to acquire inventory and, in connection with that loan, retained a first-priority security interest in all new and used vehicles owned by Chevrolet. The loan is guaranteed by

Thomas and Richard Camilleri who are in direct control of Chevrolet's inventory and who each own 50% of Subaru.

As of June 18, 1998, Chevrolet's inventory consisted of 77 vehicles with an aggregate secured balance of approximately $1,075,000. Chevrolet closed its business eight days later without GMAC's knowledge and thereafter Chevrolet and the Camilleri brothers sold 36 vehicles with an aggregate secured balance of $682,685. They failed, however, to make any payment to GMAC. GMAC alleges, *inter alia*, that Chevrolet fraudulently transferred the proceeds from those sales to Subaru for the purpose of defrauding GMAC and hindering collection of its debt.[1]

## II. Discussion

### A. Unopposed Motion to Substitute

MBDC has sold its loan position to BWM and hence those parties seek to substitute BWM for MBDC. That motion will be allowed.

### B. Motion to Dismiss

The secured parties argue that the amended complaint fails to establish (1) diversity jurisdiction or (2) actionable claims for fraudulent transfers.

#### 1. Diversity Jurisdiction

The secured parties argue that this Court does not have jurisdiction based upon diversity of citizenship because GMAC maintains a usual place of business in Massachusetts and defendants are all citizens of Massachusetts.

Federal courts have subject matter jurisdiction over civil actions between citizens of different states (where the amount in controversy exceeds $75,000). *See* 28 U.S.C. § 1332(a). Section 1332(c) provides that a corporation is deemed to be a citizen of any state (1) in which it has been incorporated and (2) where it has its *principal* place of business.

■ This Court is unaware of any statute or case law which supports the notion that a corporation is a citizen of any state in which it has a *usual* place of business. The secured parties do not allege, nor is there any indication, that GMAC's principal place of business is in Massachusetts. The fact that it has a usual place of business in Massachusetts does not destroy diversity jurisdiction and is not a ground for dismissal.

#### 2. Fraudulent Transfer Claims

■ The secured parties also argue that the amended complaint fails to allege actionable claims for fraudulent transfers under M.G.L. c. 109A because it (1) does not allege that any of the secured parties have been the recipient of fraudulent transfers from either Chevrolet or Subaru and (2) fails to allege fraud with particularity.

A transfer is fraudulent as to a creditor, such as GMAC, if, *inter alia*, a debtor makes a transfer without receiving a reasonably equivalent value in exchange for the transfer. *See* M.G.L. c. 109A, § 5. "Transfer" is defined in M.G.L. c. 109A, § 2 as

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and includes payment of money, release, lease and creation of a lien or other encumbrance.

Here, GMAC alleges that Chevrolet fraudulently transferred proceeds from the sale of GMAC's collateral to Subaru and that Subaru "now desires" to transfer those proceeds to the secured parties. A prospective transfer by a non-debtor does not fit within the statutory meaning of fraudulent transfer.

Moreover, GMAC does not allege that any transfer to the secured parties by

---

1. On July 27, 1998, an involuntary Chapter 7 bankruptcy petition was filed against Chevrolet. It has not yet been discharged so that all actions against Chevrolet are automatically stayed.

Subaru would necessarily be fraudulent, i.e., that Subaru would not receive a "reasonably equivalent value" in exchange for any transfer. *See* M.G.L. c. 109A, § 6. The remedies available to a creditor under Chapter 109A when it has been damaged by a fraudulent transfer (e.g., avoidance, attachment, injunction against further disposition) must be obtained against Subaru, not Subaru's secured creditors.

GMAC's claims against the secured parties, Counts IX – XI, will be dismissed because they do not set forth actionable claims for fraudulent transfer. It is, therefore, unnecessary to consider whether the claims against them should also be dismissed because fraud is not alleged with sufficient particularity.

### C. Motion for Summary Judgment and to Modify the Preliminary Injunction

■ Because GMAC's claim against Sovereign will be dismissed for failure to state a claim, Sovereign's motion for summary judgment is moot. Sovereign also seeks a modification of the preliminary injunction to allow the escrow agent and attorney for Chevrolet, Subaru and the Camilleri brothers, Frank P. Fitzgerald ("Fitzgerald"), to disburse proceeds from Subaru's sale of certain assets.

On July 9, 1998, this Court issued a preliminary injunction which, *inter alia,* enjoined Subaru from

> selling, mortgaging, pledging, creating a security interest in or otherwise hypothecating or transferring any assets . . . other than in the ordinary course of [Subaru's] business.

On December 30, 1998, this Court amended the preliminary injunction to allow Subaru to sell certain Subaru assets to Bernard F. Curry, III ("Curry").[2] The following language was added to the injunction:

> Nothing contained herein shall prevent [Subaru] from selling . . . assets of [Subaru], including but not limited to the sale . . . pursuant to an Asset Acquisition Agreement entered into by [Subaru] and [Curry] . . . . Any and all proceeds realized from the sale of assets . . . [to] Bernard F. Curry, III, shall be held in escrow in an interest-bearing account by Frank P. Fitzgerald, P.C. until further order of this court. All perfected liens and security interest in the assets being transferred shall attach to the proceeds in escrow, in the same order and priority.

Subaru completed a sale of assets to Curry on December 31, 1998 and the proceeds were placed in escrow.

Defendants subsequently filed a motion to further modify the preliminary injunction in order to permit Subaru to use proceeds from the sale of its assets to satisfy its secured debt. They argued that Subaru's secured creditors have priority claims, superior to any claims of GMAC, in the proceeds from the sale of Subaru assets. This Court denied that motion on July 22, 1999 by endorsement and again upon reconsideration. Sovereign now requests that this Court issue an order directing Fitzgerald to disburse the proceeds from the sale of Subaru's assets to Curry.

Although this Court recognizes that Sovereign has a perfected security interest in certain assets of Subaru that is superior to GMAC's interest in those assets, it is unable to discern from the record which assets were sold to Curry. The Bill of Sale provides that Subaru conveys:

> Its right title and interest in its Subaru dealership and the goodwill of the Subaru dealership, including but not limited

---

**2.** The sale was governed by an Asset Acquisition Agreement between Subaru and Curry. The subject assets were actually transferred to Rallye Automotive LLC in a Warranty Bill of Sale which references the Assets Acquisition Agreement. The Court presumes that Curry is a principal of Rallye.

to any and all customer lists.[3]

It is unclear whether Curry merely purchased the right to operate a Subaru dealership or whether he purchased assets particular to the C & C Subaru dealership which may have included C & C Subaru assets other than intangible assets such as goodwill and the right to use and transfer the name "Subaru". Because the phrase "right title and interest in its Subaru dealership" is ambiguous and incompatible with the property described in the Asset Acquisition Agreement, this Court cannot determine that the funds held in escrow are not somehow co-mingled with GMAC assets alleged to have been fraudulently transferred. Sovereign's motion to modify the preliminary injunction will, therefore, be denied without prejudice.

### ORDER

For the foregoing reasons, this Court rules that:

1) the motion to substitute The Bank of Western Massachusetts for Massachusetts Business Development Corporation (Docket No. 57) is **ALLOWED;**

2) with respect to Counts IX through XI of the Amended Complaint, the secured parties' motion to dismiss (Docket No. 51) is **ALLOWED;** and

3) Sovereign's motion for summary judgment and to modify the preliminary injunction (Docket No. 56) is, with respect to the request for summary judgment, **DENIED,** as moot, and, with respect to the request to modify the preliminary injunction, **DENIED,** without prejudice.

**So ordered.**

---

**3.** The descriptions of assets to be sold by Subaru is *not* the same, or even consistent, in the Asset Acquisition Agreement and the Warranty Bill of Sale.